2005 SD 20

**EQUIPMENT SERVICE PRO-
FESSIONALS, Plaintiff
and Appellant,**

v.

**Keith DENOWH, Defendant
and Appellee.**

No. 23120.

Supreme Court of South Dakota.

Considered on Briefs Nov. 15, 2004.

Decided Feb. 9, 2005.

John K. Nooney and Gregory J. Bernard of Thomas, Nooney, Braun, Solay & Bernard, Rapid City, South Dakota, Attorneys for appellant.

Craig A. Pfeifle and Joseph Ashley Parr of Lynn, Jackson, Shultz & Lebrun, Rapid City, South Dakota, Attorneys for appellee.

TIEDE, Circuit Judge.

[¶ 1.] Equipment Service Professionals, Inc. (ESP) sued Keith Denowh (Denowh) for collection of a promissory note executed by Denowh in favor of ESP. Denowh answered claiming that he tendered full payment under the promissory note by executing an assignment of his interest in a deferred compensation plan. Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of Denowh. ESP appeals. We reverse.

## FACTS AND PROCEDURE

[¶ 2.] ESP is a South Dakota corporation with its principal place of business in Spearfish, South Dakota. James Swaby (Swaby) is the sole shareholder and owner of ESP. Swaby is also the sole shareholder and owner of JAS Enterprises, Inc. (JAS), a South Dakota corporation with its principal place of business in Rapid City, South Dakota. J & K Enterprises, Inc. (J & K), a South Dakota corporation with its principal place of business in Billings, Montana, is a wholly owned subsidiary of JAS. All three corporations, ESP, JAS and J & K do business as Equipment Service Professionals. Each corporation is a commercial and residential HVAC[1] sales, installation and service business.

[¶ 3.] Denowh was employed by ESP as an HVAC technician from 1991 until 2003. On March 25, 1991, Denowh signed an agreement identified in the heading as:

EQUIPMENT SERVICE PROFESSIONALS, INC. NON-QUALIFIED DEFERRED COMPENSATION PLAN AND NONCOMPETITION AGREEMENT

However, the body of the agreement recited that it was between:

JAS Enterprises, Inc., a South Dakota corporation doing business at P.O. Box 816, Spearfish, South Dakota 57783, hereinafter referred to as "Corporation," and Keith Denowh, hereinafter referred to as "Employee."

The signature block identified the party to the agreement as JAS. It was signed by Swaby as president of JAS. An amendment to the agreement was signed on October 1, 1993 by Denowh and Swaby on behalf of JAS.

[¶ 4.] The deferred compensation agreement provided for the creation of a deferred compensation account into which contributions would be made by JAS. The money in the account was to be invested by JAS in such investments deemed appropriate by its Board of Directors. The account and all investments at all times remained in the name of JAS and the property of JAS. The agreement provided that any liability of JAS to Denowh under the agreement was an open account liability only. The agreement further provided that Denowh was prohibited from assigning or transferring any right or interest in

---

1. HVAC is an acronym for "Heating, Ventilation, and Air Conditioning."

the account.[2] The agreement also provided in paragraph 6 that JAS had the right to reduce or setoff the balance of the account by the amount of any indebtedness of Denowh to JAS.

[¶ 5.] In 2000 Denowh began employment with J & K in Billings, Montana. Denowh ended his employment in April 2003 and began his own HVAC company in Billings. Prior to terminating his employment, Denowh signed a promissory note in favor of ESP in the amount of $13,500 plus 8 percent interest per year. The promissory note secured the repayment of a $13,500 loan from ESP to Denowh. The promissory note was dated February 27, 2003 and provided for full payment of principal and interest by May 31, 2003.

[¶ 6.] On May 27, 2003, Denowh attempted to assign the balance of the deferred compensation account with JAS to ESP in satisfaction of the debt evidenced by the promissory note.[3] In addition to the assignment, Denowh tendered a personal check in the amount of $278.24 to cover the interest accrued. Swaby, as president of ESP, returned the check and refused to accept the assignment of the deferred compensation account as satisfaction of the promissory note.

[¶ 7.] ESP initiated this action seeking payment under the promissory note. Denowh answered, claiming that he timely tendered full payment of the principal and interest due under the promissory note by the assignment and tender of the check. Both parties moved the trial court for summary judgment alleging that there were no genuine issues of material fact. The trial court granted Denowh's motion for summary judgment and ordered that ESP could access Denowh's vested deferred compensation plan with JAS in the amount of $13,781.10, which amount represented the principal amount of the promissory note plus accrued interest from February 27, 2003 through May 31, 2003. ESP was further ordered to return the promissory note to Denowh marked "Paid in Full." ESP appeals.

## STANDARD OF REVIEW

[¶ 8.] "We recently stated that on appeal the grant or denial of summary judgment 'requires this Court to determine whether genuine issues of material fact exist and whether legal issues were correctly decided.'" *Vollmer v. Akerson*, 2004 SD 111, ¶ 4, 688 N.W.2d 225, 227 (quoting *Prunty Const., Inc. v. City of Canistota*, 2004 SD 78, ¶ 5, 682 N.W.2d 749, 752). Questions of law are reviewed under the de novo standard. *In re Engels*, 2004 SD 97, ¶ 7, 687 N.W.2d 30, 32–33 (citing *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611).

2. Paragraph 8 of the deferred compensation agreement provided:
   The Deferred Compensation Account represents an open account liability of the Corporation to the Employee. No rights or interest of the Employee in such account shall be assignable or transferable in whole or in part, either directly or by operation of law or otherwise, including, but not by way of limitation, execution, levy, garnishment, attachment, pledge, bankruptcy, or in any other manner, and no right or interest in his account shall be liable for, or subject to,

any obligation or liability of such Employee, provided, however, that nothing in this paragraph shall prevent the Corporation from reimbursing itself for indebtedness incurred by the Employee in accordance with the provisions of Paragraph 6 above.

3. While there may be some dispute as to the actual balance of the deferred compensation account, the parties agree for purposes of this appeal that the balance exceeds the amount due under the promissory note and is fully vested.

## ANALYSIS AND DECISION

### ISSUE

[¶ 9.]  **Whether the assignment of Denowh's rights in a deferred compensation account with JAS constitutes proper tender of payment due under a promissory note executed by Denowh in favor of ESP**

■ [¶ 10.]Denowhs sole defense to the action of ESP on the note is payment. Denowh has not asserted any claim of setoff, third party claim or counterclaim. JAS was never made a party to this action and Denowh never asserted any claim under the deferred compensation agreement against JAS. Denowh's claim of payment is based upon the assignment by Denowh of his rights under a deferred compensation agreement with JAS. ESP argues that Denowh could only satisfy his debt with the payment of money and that Denowh's attempt to assign his rights in his deferred compensation account with JAS was not proper tender. ESP asserts that the set-off provisions given to JAS under the deferred compensation agreement do not apply because the promissory note was made with ESP while the deferred compensation agreement was entered into with JAS, a separate corporate entity. It argues that it is irrelevant that Swaby is president and sole shareholder of both entities because the promise to pay was made to ESP, not to Swaby or JAS. Further, ESP asserts that the terms of the deferred compensation agreement prevent the account from being assigned and limit the manner in which withdrawals may be made.[4]

■ [¶ 11.] The parties agree that there are no genuine issues of material fact and the issue presented is a legal question. Therefore, we review under the de novo standard of review with no deference to the trial court's conclusions of law. *Bayer v. PAL Newcomb Partners,* 2002 SD 40, ¶ 8, 643 N.W.2d 409, 411 (citations omitted).

■ [¶ 12.] "The general rule is that both the payment of and tender of payment of a debt must be in money, unless the parties agree otherwise, or the obligee consents to accept some other medium of payment." 60 Am.Jur.2d *Payment* 21. *See Dale v. Pelton,* 365 N.W.2d 1, 3 (S.D. 1985) (holding that lessee's promise to pay a cash rental by transferring cows to the lessor did not constitute "cash payment"). SDCL 57A–1–201(24) defines money as "a medium of exchange authorized or adopted by a domestic or foreign government and includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more nations." The promissory note executed by Denowh provided for payment of the sum of $13,500, with interest at 8 percent and that all payments made pursuant to the promissory note would be made payable to the payee, ESP. There was no agreement by ESP to accept as payment an assignment of the deferred compensation account between Denowh and JAS.

■ [¶ 13.] Denowh ignores the separate corporate status of ESP and JAS and instead portrays this dispute as one between himself and Swaby. However, neither the deferred compensation agreement

---

4.  The deferred compensation agreement provided:

     The Employee also shall have the right to cash distributions on the first day of the seventh month and on the first day of the first month of the Corporation calendar or fiscal year. Corporation shall have a specific form which must be submitted at least thirty (30) days prior to the requested cash distribution. The Corporation shall limit cash distributions of more than $5,000 to a distribution schedule allowing for equal monthly distributions over twelve (12) months.

nor the promissory note involved Swaby in his personal capacity. Denowh does not dispute that the deferred compensation agreement was executed with JAS and that the promissory note was made to ESP. He asserts that this is a distinction without a difference. However, Denowh has not asserted a claim to pierce the corporate veil of these entities.[5] While JAS might have reserved the right to offset any indebtedness owed to JAS by Denowh against any amount owed to Denowh under the deferred compensation agreement, JAS was not a party to the promissory note or to this litigation. It is improper to ignore the separate corporate identity of these entities. *See Federal Land Bank of Omaha v. Mogck*, 66 S.D. 514, 286 N.W. 322, 323 (1939). The deferred compensation agreement granted the right of setoff to JAS to be exercised at its option. JAS is under no obligation to reduce the account balance to satisfy the indebtedness of Denowh to ESP under the promissory note and the trial court did not have jurisdiction to order a non-party, JAS, to do so. *See Lang v. WPPO*, 2004 SD 107, ¶ 19, 688 N.W.2d 403, 409. Additionally, the deferred compensation agreement with JAS specifically provides that the account is non-assignable and also limits the manner in which Denowh may withdraw money from the account.

[¶ 14.] The promissory note executed by Denowh was due in full on May 31, 2003. " 'To constitute a valid tender at common law, the party must have the money at hand, immediately under his control, and must then and there not only be ready and willing, but produce and offer, to pay the other party.' " *Smith v. Egan*, 35 S.D. 10, 13, 150 N.W. 290, 291 (1914) (quoting *Stakke et al. v. Chapman*, 13 S.D. 269, 272, 83 N.W. 261, 262 (1900)). *See*

*also* 74 Am.Jur.2d *Tender* 7 ("A valid tender requires not only the readiness and ability to perform, but the actual production of the thing to be delivered.") Denowh did not have immediate use of the money in his deferred compensation account.

[¶ 15.] JAS also may have other defenses to any claim by Denowh under the deferred compensation agreement. ESP as assignee of Denowh would be subject to such defenses. *See Gilbert v. United Nat. Bank*, 436 N.W.2d 23, 25–26 (S.D.1989). JAS may be insolvent or otherwise unable or prohibited from making payment to Denowh under the agreement. The purported assignment factually and legally was not valid tender or payment.

## CONCLUSION

[¶ 16.] Denowh does not have the right to assign his interest under the terms of the deferred compensation agreement. Any cash withdrawal from the account in an amount in excess of $5,000 is limited to monthly distributions over a twelve month period. Denowh sought to circumvent the terms of the deferred compensation agreement with JAS by obtaining a loan from ESP in the approximate amount of his deferred compensation account and then attempted to satisfy the promissory note with an assignment of the deferred compensation account. This was a "backdoor" attempt by Denowh to receive an immediate payout of the balance of his deferred compensation account contrary to the specific terms of the agreement.

[¶ 17.] Therefore, we reverse the trial court and find that as a matter of law Denowh did not make a valid tender under the promissory note. The trial court is directed to enter judgment in favor of ESP

---

5. The trial judge, in issuing its oral decision, acknowledged that "this is not an action of

piercing the corporate veil at this point in any fashion."

in the amount of the promissory note plus accrued interest through the date of the judgment.

[¶ 18.]   GILBERTSON, Chief Justice, KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 19.]   TIEDE, Circuit Judge, for SABERS, Justice, disqualified.